J. R. GARDNER, Respondent, *agt.* ARCHIBALD McCLURE, executor of the last will of NATHANIEL WRIGHT, deceased, impleaded with WILLIAM W. PELL, *et al.*, Appellants.

APPEAL FROM THE DISTRICT COURT OF NICOLLET COUNTY.

The deposit of title deeds of land, with a creditor, as security for a debt, even if accompanied with a writing stating the object of the deposit, will create no estate in the land in favor of the creditor, but merely gives him a lien on the deeds.

The English doctrine upon this subject repudiated, as having been founded in acknowledged error.

The Plaintiff sued by his initial letters, and not his full name. *Held*, bad practice, that may vitiate a judgment as against a purchaser of land, upon which it would otherwise be a lien, but that the defect cannot be reached by demurrer.

The complaint of the Plaintiff shows that the Defendant, William W. Pell, on the first day of September, A. D. 1857, executed to him the said Plaintiff, for a good and valuable consideration, a certain Promissory Note, of which the following is a copy :

"ST. PETER, Sept. 1st, 1857.

"$100.00.          Ninety days after date I promise to pay to the order of J. R. Gardner, one hundred dollars, value received, with use at 4 per cent per month until paid.

"W. W. PELL."

That on the day of the date of the execution of the said note, the said Defendant Pell, was the owner of and lawfully seized of a good and indefeasible estate of inheritance in fee simple in lot No. one (1) in block No. one hundred and thirty-nine (139), in the Town of St. Peter, in Nicollet county and State of Minnesota, according to the plat of said town as recorded, &c. That said lot was purchased by said Pell of the St. Peter Company, a corporation duly incorporated by an act of the Legislature of the State of Minnesota, March 1st, A. D. 1856, which said company conveyed the said lot to said Defendant Pell, by deed of general warranty and the usual

full covenants, on the 13th day of June, A. D. 1857, by deed of that date, duly acknowledged and delivered to the said Wm. W. Pell, whereby the St. Peter Company granted, bargained and sold the said premises to the said Plaintiff for a valuable consideration.

That on the first day of September, A. D. 1857, the said Defendant Pell gave, placed and put into the hands and possession of the Plaintiff, the said title deed of the said premises, as collateral security for the payment of the said promissory note; agreeing and stipulating at the same time to and with the said Plaintiff in writing that said title deed was deposited and should remain with and in possession of said Plaintiff as such security, of which agreement or stipulation the following is a copy :

"This is to certify that I have this day given to J. R. Gardner a Warrantee Deed to lot No. 1 in block 139, executed by the St. Peter Company, said deed not yet being recorded, dated March 1st, 1857.   To have and to hold as security on the faithful payment of a certain promissory note even date with this, for one hundred dollars.   And I do by these presents bind myself, my executors or assigns under the penalty of two hundred dollars that I will by no means defraud said Gardner by forcing said St. Peter Company to give me another deed of said lot or by any means whatever destroy said security in hands under the above named penalty."

That the said Defendant Pell has failed to comply with the terms of said promissory note by omitting to pay the same or any part thereof, which became due to him the said Plaintiff on the second day of December, 1857, and there is now justly due and owing to this Plaintiff by said Defendant Pell on said Promissory Note and the said Equitable Mortgage, the sum of two hundred and sixty-five dollars and thirty-three cents. That no proceedings have been had at law or otherwise for the recovery of the said sum secured by the deposit of said title deed or any part thereof.

That the said Plaintiff is informed and believes that the Defendant Archibald McClure and others (named in the complaint,) have or claim to have some interest in or lien upon the said premises or some part thereof, which interest or lien (if any) has accrued subsequent to the lien of this Plaintiff.

That the interest, claim or lien of the last named Defend-ants (if any they have,) arise from a certain paper or instru-ment purporting to be a mortgage and bearing date the four-teenth day of October, 1857, executed by Defendant Pell to the said Nathaniel Wright, deceased, executed and purport-ing to be given to secure a prior existing indebtedness due from said Pell to the said Nathaniel Wright on a certain promissory note dated the 8th day of May, 1857, for the pay-ment by the said Pell to the said Wright of the sum of three hundred and fifty dollars and interest in one year from the date thereof ; which said note is described in the last men-tioned mortgage, and which pretended mortgage as the Plain-tiff is informed and believes was thereafter recorded in the office of the Register of Deeds of Nicollet county aforesaid.

But Plaintiff charges that at the time of the execution of the said mortgage and before the execution and delivery thereof to the said Wright, he, the said Wright, well knew and had full and actual knowledge and notice of the deposit of said title deed by said Pell with this Plaintiff, as security as aforesaid, and of all the facts and circumstances connected therewith as hereinbefore set forth.

The Plaintiff further says, that at the time of the execution of the said last mentioned mortgage, the said title and deed from said St. Peter Company to the said Pell, ot the premises here-inbefore described, was the only title the said Pell then had to the said premises.

That there was no contract, deed or title then of record show-ing that said Pell had then or ever had any lien, claim or title in or to said lot.

The Plaintiff further alleges on information and belief, that the said Nathaniel Wright in his lifetime foreclosed or pre-tended to foreclose the said mortgage to him executed by De-fendant Pell, and sold or pretended to sell the said lot in sat-isfaction of said mortgage, and under or by virtue of a cer-tain proceeding had thereon for that purpose.

The Plaintiff further states on information and belief that the proceedings in pursuance or by virtue of which the said lot was so sold or pretended to be sold, was a suit in Chancery or civil action in this court, to which suit the said Nathaniel

Wright and Defendant Pell and Ann E. Pell his wife, were parties, a judgment or decree rendered in satisfaction and entered in the Judgment Book for the said District Court of the county of Nicollet, in the office of the clerk of said Court, on the 17th day of May, 1859, and a published notice of such sale. That by said judgment and decree the said premises were ordered and adjudged to be sold. That under or by virtue of said judgment or decree the said Wright made or pretended to make a public sale thereof, that such sale was made on the 2d day of July, A. D. 1859, that at such sale the said Wright pretended to purchase and bid off the said lot. That said lot was by the auctioneer at such sale declared to be sold to and was struck off to said Wright. That said lot was conveyed to said Wright by Sheriff's Deed bearing date of July 2d, 1859, and which said deed was recorded in the office of the Register of Deeds of said county of Nicollet, on the 1st day of August 1859, in Book E of Deeds, pages 111 and 112.

The Plaintiff further alleges that he the said Plaintiff was not a party to said suit or action, and was never served with process, nor appeared therein ; and that the said suit or action, the decree or judgment and all proceedings had therein under or by virtue thereof, were fraudulent and void as to him. The Plaintiff further says that on the public sale aforesaid, the said Wright paid no new or further consideration for the said lot, and that he the said Wright nor his estate since he deceased, nor any of the Defendants herein had any right, title, interest or lien in, to or upon said land save and except by and through the said mortgage so executed to the said Wright. And that the only consideration paid therefor was the said prior indebtedness if any there was.

The Plaintiff further shows that the said Nathaniel Wright is now dead; that the Defendant Archibald McClure is the executor of his estate and last will and testament, duly qualified, and that the other Defendants hereinbefore named, claim to have an interest therein.

Wherefore Plaintiff demands that the mortgage executed by Defendant Pell to said Wright, be declared a subsequent lien to the equitable mortgage and lien of this Plaintiff, or

that the same and all proceedings thereon by virtue or in pursuance thereof, be adjudged fraudulent and void as to or against this Plaintiff.

That the Defendants and all persons claiming under them or either of them subsequent to the commencement of this action, may be barred and foreclosed of all right, claim, lien and equity of redemption in the said mortgaged premises.

That the said premises may be decreed to be sold according to law, and that out of the proceeds of such sale, the Plaintiff may be paid the amount due on his said note with interest to the time of such payment and the costs and expenses of this suit, so far as the proceeds of such sale will pay the same, and that the said Defendant Pell may be adjudged to pay any deficiencies which may remain, and that he the said Plaintiff may have such other or further relief or both in this action as shall be just and equitable.

The Defendant Archibald McClure, sole executor, &c., demurred to the complaint upon the following grounds:

1. That the said complaint does not state facts sufficient to constitute a cause of action.

2. That the said complaint does not state facts sufficient to entitle the Plaintiff to the relief, by him, in and by the said complaint demanded, or any part thereof.

3. That the facts, stated in the said complaint, do not, at law or in equity, constitute or create any interest or estate in, or lien or incumbrance upon, the premises therein described, in favor of the Plaintiff.

4. That an equitable mortgage or lien upon real estate for the security of the payment of a debt, cannot, by the laws of this State, be created by a deposit of title deeds with the creditor, in manner and form alleged in the said complaint.

5. That there is a defect of party Plaintiff in this, to-wit: that "J. R. Gardner" is not, in the law, the name of a party or person, and does not, in the law, identify any party or person having the legal capacity to sue. An initial letter is not a name within the meaning of the statute.

The demurrer was overruled and Defendant appealed.

Points and Authorities of Appellant.

I.—It does not appear by the complaint that the Plaintiff at the time when Pell deposited with him the title deed, made any advance of money to Pell, or that he then held unpaid any actual debt against Pell.   By the English rule in equity, an actual advance of money at the time, or an actual pre-existing *bona fide* indebtedness, is absolutely necessary to sustain an equitable mortgage by the deposit of title deeds of the estate.   *Miller on Equitable Mortgages*, 27 *to* 73; *Coote on Mort.*, 165 *to* 175; 2 *Crabb on Real Property*, 849, *sec.* 2203; *Cross on Law of Lien*, 143 *to* 168, *ch.* 10; 1 *Leading Cases in Eq.*, 440 *and note*; *Smith on Real and Personal Property*, 305; 2 *Story's Eq. Ju., sec.* 1020; 4 *Kent's Com.*, 150, 2d *Ed.* And wherever in this country the rule has been adopted, it has been founded wholly on English precedents.   2 *Story's Eq. Ju., sec.* 1020; 1 *Leading Cas. in Eq.*, 465, (*Law Lib. vol.* 40); 2 *Sand. R.*, 9, 12; 2 *Hill's Ch.*, 166; 10 *Smedes' & Mar. R.*, 418; 8 *B. Monroe R.*, 435; 1 *Rawle R.*, 325; 4 *Kent's Com.*, 150, 2d *Ed.*

II.—The complaint in this case alleges that Pell, for a valuable consideration, executed and delivered a promissory note of even date with the deposit of the deed as security for the payment thereof, and it does not allege anything more touching the consideration.   It is not sufficient, for every fact alleged might be sustained on the foundation of a single dollar. The doctrine of such equitable mortgages, is not favored anywhere, and it never has been, and never ought to be, applied, unless the party seeking its benefits, complies strictly with all its requisitions, and alleges affirmatively every fact necessary to entitle him to such benefits.   He must not leave anything to inference or in doubt.

III.—The Plaintiff in this case does not allege that the said title deed has, ever since the deposit, remained in his possession, or that it was in his possession at the time of the commencement of this action.   *Non constat*, except by inference or implication, that he still holds the deed under the deposit in pledge.

The authorities before cited sustain also the proposition contained in this point. As to the doctrine of express pledges, see *Cross on Law of Lien*, 63 *to* 77, *ch*. 3; 4 *Kent's Com.*, 138, 2*d Ed.*, *sec.* 58; 1 *Parsons on Cont.*, 594; 4 *Barb. R.*, 491; *Smith on Real and Personal Prop.*, 307.

IV.—The doctrine of equitable mortgages, created by deposit of title deeds, does not obtain or prevail in this state. The reasons on which it was founded and established in England, do not exist here, nor do the reasons on which it has been sustained and continued there, (reasons very different from those on which the precedent set, rested,) nor are the laws which gave force and effect to those reasons there, in force here. And besides, the statutes of conveyances and of frauds of this State, preclude the doctrine and prevent its application. *Comp. Stat.*, 396, *ch.* 35—457, *ch.* 49, *sec.* 6.

V.—The instrument in writing executed by Pell under his hand and seal, and copied into the complaint, does not take the case out of the operation of those statutes. It is insufficient for such purpose. It does not, in its terms, pretend to create any interest or estate in or lien upon the land described in the deed. It purports to reach only the deed,—the paper,—and the possession of it; and its language cannot, under the ordinary rules applicable to written evidence, be extended to the title, or at all, by construction or implication. It is not a " deed or conveyance in writing * * * creating, granting, assigning, surrendering or declaring" any "estate or interest in lands" within the provisions of the said statutes of conveyances and of frauds; but a mortgage is such deed or conveyance. Nor is the said instrument witnessed by two subscribing witnesses—which is a statutory necessity to a "deed of conveyance" of lands in this state.

VI.—The doctrine on which the claim made by Plaintiff in his complaint rests, is contrary to the policy of the land laws and registry laws of this state, and ought not to be recognized or countenanced by its courts. Several of the states have rejected the doctrine and refused to entertain or adopt the rule, nor is it universal in Great Britain. Scotland repudiates it. 3 *Penrose & Watt's*, 239; 3 *Barr. R.*, 233; 8 *B. Monroe R.*, 435.

VII.—There is not any definite or certain name of a party Plaintiff in this action. The law requires at least one christian name of a party to proceedings in Courts of Justice, and an initial letter is not a name.

Points and Authorities for Respondent.

I.—An equitable mortgage by deposit of title deeds is supported by a contract for future advances. *Coote on Mort.*, 169, 170, *side pages*. And also for the security of a collateral or contingent liability. In short, whatever will support a contract will support an equitable mortgage, and there is no such English rule as is pretended. 4 *Kent's Com.*, *p*. 154, *8th Edition*.

II.—The objection to the consideration may be plainly stated as follows : The consideration for the note secured by the deposit of the title deeds is not detailed or affirmatively set forth in the complaint so as to discover its kind and nature. If this was ever required in equity pleadings (for which I can find no authority and have looked for it in vain,) it is most certainly abrogated by the code and the act providing for uniformity of pleadings. *Van Sant. Pl.*, 219, 220, 221; 1 *Chit Pl.*, 292–3 *n*.

Again, no presumption such as that the note was not for an adequate consideration, or that it was got up for a "made" case by collusion of the parties to amuse themselves at the expense of the Court will be indulged. *Van Sant. Pl.*, 775.

Any such suppositions if believed by the Appellants might have been set up by way of defence, but the Court will hardly indulge in them for any one's benefit.

It is sufficient if it appears from the complaint or the instrument plead, that there was a consideration for the contract. Story, in his Pleadings, in enumerating when a demurrer will lie to a bill in equity, says, that if it should appear that there was no consideration, a demurrer would undoubtedly lie. *p*. 472, *sec.* 503.

The complaint shows an indebtedness, deposit of title deeds and a contract; these, under the main doctrine give title irrespective of the present whereabouts or location of the docu-

ument, provided the title and lien have not been abandoned, or transferred and conveyed by contract. The question concerning the abandonment or transfer of the title in the case at bar, and the loss of Gardner's rights therein can be raised only by disputing that Gardner. is the Plaintiff in interest, which must be done in all cases by answer, unless it appear from the complaint that he is not.

Whether the demurrer shall stand or fall depends upon the law of equitable mortgages by deposit of title deeds and whether that law is the law of the land.

III.—On the main controversy we submit these points :

1. The deposit of title deeds to secure an indebtedness constitutes an equitable mortgage according to the English law. We suppose that this will be admitted, but refer to the authorities for the rule to aid us in discussing its application in the case at bar.

The first case in which this doctrine was fully established was *Russel vs. Russel* decided by Lord Loughborough in in 1783, reported in 1 *Bro.*, 238. This decision has been persistently sustained notwithstanding the course of Lord Eldon and Sir William Grant, and is now the established law of Great Britain.

There is hardly a report that does not contain some decision upholding it, and all the text books recite it as the law. *See* 1 *Hill. Real Property*, 490, *and notes* 2 *and* 3, citing sixteen different cases, *Id.*, 491, *sec.* 5–6–7; 1 *Hill. on Mort.*, 601, *sec.* 7 *and* 8, *and note c*; *Id.*, 602, *sec.* 9, *p.* 603, *sec.* 10, 11; *Id.*, 603, *sec.* 13, 16, 19, *and* 19 *a*; *Whitworth vs. Grange*, 3 *How.*, 416, 424, 429; *Adam's Eq.*, 123 (*side pages,*) *to* 126; *Willard's Eq.*, 440 *and* 441; 4 *Kent's Com.*, 149 *to* 151.

2. Does this doctrine prevail in the United States ? Most indisputably it does. *Howard vs. Agy*, 9 *Mass.* 179; *Rockwell vs. Hobby*, 2 *Sand. Ch. R.*, 9; *Day vs. Perkins*, *Ib.*, 359; *Welch vs. Usher*, 2 *Hill. Eq.*, 170; *Hall vs. McDuff*, 11 *Shepl. Me. R.*, 311; *Clabough vs. Byerly*, 7 *Gill.*, (*M. D.*) 354; 4 *Wend.*, 369; 1 *J. C.*, 114; 2 *J. Ch. R.*, 603; 1 *do.* 394.

The rule is also recognized by the Supreme Court of the United States. *Mandeville vs. Welch*, 5 *Wheat.*, 284; 1 *Hill. on Mort.*, 605, *sec.* 15.

It is also adopted in Mississippi and Louisiana, also in South Carolina.

There can be no question at this late day after the innumerable decisions in which the point has been involved and overruled, that the statute of frauds does not apply. 2 *Story's Eq.*, 1020; *Rollerton vs. Morton*, 1 *Gra. & Wat.*, 195; 1 *Hill. on Mort.*, *p.* 603, *secs.* 10–11–12–13, containing a digest of the case of *Keys vs. Williams*, 3 *Y. & Coll. Ex. Ch. Rep.*, 60 and 61, expounds and vindicates the whole doctrine and policy.

So the memorandum is sufficient to take the case at bar out of the statute if it would have been within it, had it been on a parol agreement. The memorandum avoids the necessity of a resort to parol testimony to prove the contract which it is the object of the statute to avoid. *Exparte Haigh*, 11 *Ves*, 403–4; *Exparte Laughton*, 17 *Ves.*, 230; 1 *Hill. on Mort.*, *p.* 607, *sec.* 20; *Cross on Lien*, 104–5, 118; *Coote on Mort.*, (169,) 216–17; *Heirn vs. Mill*, 13 *Ves. Ju.*, 115.

The Appellants' attorneys take the objection that the memorandum is not a deed or " conveyance " within the meaning of our *Statute of Frauds*, *p.* 457, *sec.* 6. It is not essential to a conveyance in writing that it should describe the premises. Any instrument that declares the intention of the parties in writing, to which intention or the acts thereby performed the Courts and the law give the force of a title or conveyance, is sufficient. 1 *Vol. Wharton Law Dic.*, *p.* 210; *Coote on Mort.*, 217; *Cross on Lien*, 118, *top pages.*

But it is not proper to apply the strictly law rules for the construction of the Statute of Frauds to the equity side of the court, to the investigation of equitable claims. The rules are essentially different. *Hill. on Trustees*, *p.* 259, (*top notation*), and 171 (*side notation*).

IV.—The seventh objection, if ground of demurrer, can only be taken under *subdivision* 4 *of sec.* 65, *p.* 540 *of Comp. Stats.*, and that relates to parties and not to the spelling of names. But *sec.* 96 *of p.* 544 *of the Statutes*, settles that frivolous objection about names if an error in the slightest degree. And who can say the Respondent's mother did not call him by the same designation that we do. Certainly

it is his common well known name and alike known by himself and by all others.

CHATFIELD & BUELL, Counsel for Appellant.

AUSTIN & WARNER, Counsel for Respondent.

*By the Court*—FLANDRAU, J.—The English statute of frauds and perjuries enacted as follows : That no "action shall be brought upon any contract or sale of lands, tenements or hereditaments, or of any interest in or concerning them, unless the agreement upon which such action shall be brought, or memorandum or note thereof, be in writing and signed," &c. It was customary for parties borrowing money, to secure the creditor by depositing with him the title deeds of land. Sometimes these deposits were accompanied with a written memorandum stating the purpose for which they were made, and sometimes they were entirely without writing.  Prior to the registry acts, such deposits furnished creditors with a valuable security by giving them a lien upon the deeds themselves, without creating any interest or estate in the lands, because the owner could not recover possession of the deeds without paying off the incumbrance, and he could not conveniently deal with the land without them.  It was similar to a solicitor's lien, viz : a right to hold the deeds so as to enforce payment by embarrassing the debtor, but unaccompanied by any charge upon the estate. *Adams' Eq.*, 323.  Had such securities been confined to the deeds alone, no infraction of the Statute of Frauds would have occurred.  But the Courts, desirous probably of carrying out what they considered the intention of the parties, circumvented the plain provisions of the statute of frauds by creating the fiction that the deposit of the deeds with the creditor was in itself evidence not only that the deeds were to operate as a security, but such security was to be effectuated by a mortgage. *Adams' Eq.*, 334.  This was first so held in the case of *Russel vs. Russel,* 1 *Bro. C. C.*, 269.  It was followed by *Featherstone vs. Fenwick and Harford vs. Carpenter*, 1 *Bro. C. C.*, 269, *note*, and *Birch vs. Ellames*, 2 *Aust.*, and became the settled law of

England.  For the history of the rise and progress of this doctrine, see *Coote on Mort. ch.* 9, *p.* 165; 1 *Maddock's Ch.*, 537; *Cross on the law of lien, ch.* 10, *p.* 143; 4 *Kent's Com.*, 154; 2 *Story's Eq. Jur., sec.* 1020; *Adams' Doctrine of Eq.*, 333; 1 *Hill. on Mort., p.* 599.  These writers all concur as to the origin of the doctrine being with the case of *Russel vs. Russell*, and they are equally harmonious in their expressions of regret that it ever-was adopted, whenever they indulge in any comments upon the subject.  It has always been a source of profound regret also to the equity Judges of England who have followed Lord Thurlow, that he decided the case of *Russel vs. Russel* as he did.

In the case of *Exparte Hooper*, 19 *Ves.*, 477-8-9, Lord Eldon, the most experienced of the Lord Chancellors of England, said, "with great deference to Lord Thurlow, who first held that the deposit of a deed necessarily implied an agreement for a mortgage, I repeat that this decision has produced considerable mischief; and that the case of *Russel vs. Russel* ought not to have been decided as it was.  And again in *Exparte Whitread*, 19 *Ves. Jun.*, 211, he said that in his opinion the judicial decisions establishing this doctrine approach to a virtual repeal of the statute of frauds; and while he admitted that he was bound by the decisions, he refused to extend them any further.  See also, *exparte Kensington*, 2 *Ves. & Bea.*, 83.

In *Norris vs. Wilkinson*, 12 *Ves. Jun.*, 192, Sir William Grant expresses great disapprobation of the doctrine, and thinks it a violation of the statute of frauds.  See also *Exparte Haigh*, 11 *Ves. Jun.*, 403.  In *Adams' Eq.*, 334, the author declares the conclusion by which the implied agreement for a mortgage is arrived at to be unsatisfactory.

In *Maddock's Chancery, vol.* 1, 538, it is declared that the explanation by parol of a deposit of title deeds has often been lamented.  He says "deposits are not favored especially when contradicting a written instrument.   It were well perhaps if no such mortgages were permitted; they seem contrary to the spirit and letter of the Statute of Frauds," &c.  1 *Meriv., p.* 9; *Exparte Combe*, 17 *Ves.*, 369.

In *Coote on Mortgages*, 222, the author, after going fully over the cases, makes the following comments as the result of

his observations and researches : "On a review of the decided cases establishing this mode of mortgage security, it is, perhaps, to be regretted, that the old law was not adhered to, and the principle upon which the Statute of Frauds was founded, more respected. For, although equity, by declaring the deposit itself to be evidence of an agreement executed, has contrived to evade the strict and literal wording of the statute; yet it is manifest that the door has been in some degree open to fraud and perjury."

The regrets expressed by the Judges and elementary writers were, more particularly, addressed to those cases which hold that the mere deposit, without any writing, declaring the design and purpose with which it is made, may be shown by parol to create a mortgage upon the land, than to those cases in which the deposit is accompanied by a memorandum in writing, as in the case at bar. Yet, unless the writing is sufficient in its terms, and manner of execution, to create the interest or estate in the lands intended by the parties, the distinction is unsound, and the Statute of Frauds presents an obstacle as insuperable in the one case as in the other. The instrument that was executed by Pell at the time of the deposit, does not pretend to create any interest in the land described in the deed deposited, but refers solely to the deed itself, and is entirely clear. It is not executed with the forms required by the statute to pass an interest in real estate. *Shaubhut vs. Parrot,* decided July Term, 1861 ; and it is as much an infringement of the Statute of Frauds to hold that such a writing can create a mortgage upon the land, as it was in *Russel vs. Russel,* where the title deed was deposited without any writing.

Our statutes on this subject are more exacting than that of England at the time of the decision of *Russel vs. Russel, Comp. Stats.,* 396; *Id.,* 457, *sec.* 6, *Id.,* 400, *sec.* 30.

The doctrine established by the English cases seems to have been adopted in some of the United States and rejected by others. It is unnecessary, and, perhaps, unprofitable, to attempt to discover which way the weight of authority lies. The custom of giving such security has never obtained in this country to any extent, and never can, as long as we adhere to

our system of registering all titles to land. The important question for our determination is, whether we should admit the binding authority of precedents confessedly founded in error, and fasten upon our young State the antiquated heresy that has been productive of nothing but evil for three quarters of a century.

Were we in the situation in which Lord Eldon found himself when he was called upon to decide the same question, we would not hesitate a moment. The rule *stare decisis et non quieta movere*, we regard as of quite as much importance as any in the administration of justice. Had our predecessors adopted this rule, it would have been infinitely better to stand by their decision than to depart from it, even if we doubted the soundness of their holding. Any commercial question is much better settled in a manner so that all men may act upon it, than to be left fluctuating between conflicting decisions, and this, even if it is settled upon principles of questionable authority. Nothing would be more painful to me than to see a spirit arise in the State to unsettle judicial determination, and nothing can be more disastrous to the business interests of the country. We think, therefore, that whenever a question is presented for the first time, and we become satisfied that the courts in England, or in any of the States, have adhered to a rule which they confess to be erroneous, simply because they are bound by precedents of their own making, it is our duty, as well as our privilege, without violating any rule of decision, to adopt the view most consonant with reason and principle, in order that our successors may not be tempted, when the question arises again, to emancipate the State from the shackles of venerable error, by doing then, what we should do now.

In the case of *Selby vs. Stanley*, 4 *Minn. R.* 74, we were discussing a question where it was manifest that the English courts had adopted and adhered to a rule which they admitted was not the best one, but from which they could not depart.

In accepting the principle, which they regretted had not been adopted in the beginning, we made use of this language which is applicable to the case at bar. " In a new State like our own, we enjoy the advantage of all the light which has

been thrown upon questions, without being tied down by precedents which are admitted to be founded in error ; and, therefore, we are free to select, as a basis of our decision, whatever may appear to be founded on principle and reason, rejecting what is spurious and unsound, even if dignified by age, and the forced recognition of more learned and able Judges."

It is our opinion that the deposit of the deeds, and the execution of the accompanying writing, did not create any interest in the land in favor of the depositary.

The Defendant objects to the complaint on the ground that the Plaintiff sues by his initial letters, and not his full name. We could not say, from a mere inspection of the record, that such was the case. The Plaintiff may have adopted the name under which he sues. If, however, a Defendant who has a Christian name, of which " J." is the initial, should be sued, and judgment taken against him by such initial letter, very serious questions might arise as to whether subsequent purchases would be bound to know that the judgment was against the land of John, Jacob, or James, or whether they would be bound to notice such a judgment at all. It is very bad practice to designate either Plaintiff or Defendant by the initial letters of their names in a judicial proceeding ; but a demurrer will not lie for the defect.

Order overruling demurrer reversed, and judgment ordered for Defendant.