## PIERCE v. PARRISH et al.

When a vendee of land is in possession under a bond for title, and, being indebted to the vendor a balance of the purchase-money, procures a third person to pay such balance to the creditor, agreeing that such third person shall receive from the vendor title to the land in his own name and hold it until the debtor shall have paid to him the full amount so advanced, such vendee is, immediately on the payment of such balance, entitled to a conveyance of the land, and a verbal agreement that the deed so held shall be security for certain supplies thereafter to be furnished is invalid and can not be enforced.

Submitted June 20. — Decided August 8, 1900.

Equitable petition.    Before Judge Evans.    Bulloch superior court.    December 1, 1899.

Tom Pierce bought land of Mikell for $240, paying $80 in cash and giving notes for the balance.    He afterwards paid all but $40, and, having but $20, procured Parrish to advance the remaining $20 and take to himself a deed from Mikell conveying the land, upon the agreement that Parrish would make a deed conveying the land to Pierce or his wife upon the repayment of the $20 so advanced.    This sum was subsequently paid to Parrish by Pierce's wife, and, according to the testi-

mony of the Pierces, they thereupon demanded of Parrish that he make the deed according to the agreement, but he replied that he was busy and would make it at some other time. It was in fact never made. Something over two years later, Parrish conveyed the land to Sharpe & Co., who ousted the Pierces from possession, which they had held continuously from the time of the purchase from Mikell. Then this petition was brought, to cancel the deed to Sharpe & Co., and to require Parrish to make a deed to Pierce. The defense was, in brief, as follows: When the last payment of the balance due on the land was made to Parrish, he offered to give Pierce his papers and make him a deed, but Pierce said, "No, I must have some supplies and a mule, and I don't know where I can get them; and if you will let me have them, you can hold the deed to secure you." Parrish thereupon furnished Pierce the mule and other articles, amounting to $142, taking the notes of Pierce and his wife. These were not paid when due, and Pierce agreed to turn over the land to Parrish, and did so, renting it from him for the next year, 1897, and giving him notes for the rent. At this time Parrish offered to surrender to Pierce his notes for the mule and supplies, but Pierce told him to keep them, saying that he (Pierce) might get some one to buy the land and sell it to him, and, if he did, the notes would show how he and Parrish stood. Parrish then informed Pierce that he intended to sell the land as soon as he could, offering to take $150 for it from any one. He soon afterward sold it to Sharpe & Co. for that price. The execution of a rent contract for 1897, and of rent notes, by the Pierces to Parrish, was proved; and the testimony introduced by the defendants supported their contentions of fact. Pierce testified that he refused to sign a rent note when Parrish asked him to do so; but he was finally induced to sign, because of Parrish's representation that it would give Parrish a lien on the crop for what Pierce owed him. He never agreed to pay any rent; nothing was ever said about Parrish holding the land until he was paid for the supplies and mule; but Pierce repeatedly insisted on having a deed, and could get no satisfaction from Parrish about it, etc. According to defendants' testimony, Pierce knew what he was signing, the contract and notes having been read to him. It appeared

that, about January 1, 1898, Sharpe went to Pierce to rent certain turpentine timber on the land in dispute. Pierce testified that he told Sharpe that he (Pierce) owed Parrish about $50 for supplies and a mule bought in 1896, that Parrish held title to the land and would not give him a deed until he paid Parrish, and that if Sharpe would let Pierce have the money he could get a deed and would let Sharpe have the turpentine timber; and then Sharpe went and bought the land from Parrish, without Pierce's knowledge or consent, having been told by Pierce that he had paid for it. Sharpe testified that when he went to rent the timber Pierce told him he could not rent it, as Parrish owned the place and was going to sell it, and he (Pierce) would like for Sharpe to buy it and let him continue to live on it, and if ever he was able he would like for Sharpe to sell it to him. Sharpe then bought the land of Parrish in good faith, with no idea that Pierce or any one else had any interest therein until later.

The verdict was for the defendants, and the plaintiff's motion for a new trial was overruled. For the other facts see the opinion.

*H. B. Strange* and *J. M. Murphy*, for plaintiff.
*J. A. Brannen* and *W. Van Tyler*, for defendants.

LITTLE, J. It is very clear, under the evidence, that a new trial should have been granted. It may be well enough to observe, in the outset, that the claim that Sharpe & Co. were bona fide purchasers of the land, and that therefore as to them the verdict should have been allowed to stand, was not pressed in the presentation of the case in this court, nor is it referred to in the brief for the defendants in error which was filed here. On the contrary, counsel for defendants in error state in their brief that there is but one issue formed by the pleadings in this case, and that is, whether or not Pierce delivered the land in question to Parrish in satisfaction of the debts which the deed was held to secure, or whether Parrish procured the rent note by fraud. Accepting the contention thus made as being the issue presented for our determination, we omit any further reference to the question whether Sharpe & Co. were bona fide purchasers without notice, and were thereby entitled to hold

the land against the equity of Pierce, even if such existed, and proceed to the consideration of the rights of the petitioner and the defendant Parrish under the evidence submitted. Eliminating, for the present, the evidence introduced on the part of the plaintiff, it appears from that of Parrish himself that he held title to the land as security for the payment of twenty-two dollars, being the balance of the purchase-money due by Pierce to Mikell, which Parrish advanced. This witness testified that "Tom or his wife did pay me $22, but that did not pay me all he owed me including my time." Whether it paid all that Pierce was due Parrish was not the question. Under the agreement as testified to by him, the deed made by Mikell was only to secure the amount advanced. On this subject the witness says: "Mr. Mikell was about to sell the place for the balance Tom owed him, and Tom seemed to be in a good deal of trouble, and insisted on my helping him out, and finally he got part of the money and agreed that if I would pay the balance he would pay me for my time I lost in attending to it, and would have Mr. Mikell to make the deed to me to secure the amount advanced." So that, under this evidence, while Pierce agreed to pay Parrish for whatever time Parrish lost in attending to the business, the deed which Parrish held from Mikell was simply to secure the amount which Parrish advanced. This being true, at the time the balance of twenty-two dollars was paid, Pierce had a perfect equity and was entitled to a conveyance vesting in him the legal title to the land; and Parrish had only the naked paper title. This witness further testified that when this balance was paid he offered to make to Pierce a deed to the land, which was declined, Pierce saying that he must have some supplies and a mule and that he did not know where he could get them, and that if Parrish would let him have them he could hold the deed as security for the payment of such mule and supplies. Under this arrangement Parrish did furnish him with the mule, guano, and supplies, and when fall came Pierce failed to pay for the same, and Parrish told him that he needed the money and that Pierce would have to do something, or Parrish would have to sell the place. Evidently Parrish proceeded on the idea that this conversation was sufficient to bind the land for the payment of the

value of the mule and the supplies which he furnished; but as a matter of law it did not have this effect. The title which the witness held was, as a security, limited to the balance which he had advanced to Mikell to pay the purchase-price of the land, and could not by a mere parol agreement be extended to include any other debt. At the time of this conversation and alleged agreement, as we have seen, Parrish had no interest in the land save as the possessor of the naked paper title, and, if he had desired to secure the payment of his advances to Pierce, he should have had such contract of security reduced to writing and executed by Pierce. This is the only way in which such security could have been created. Section 2956 of the Civil Code declares that the delivery of title deeds creates no pledge, and the contract as testified to by this witness was the equivalent of the delivery to him of the title deeds to the land; and while the witness held the title as between himself and Pierce, the title to the land was in Pierce, and when the latter consented that the witness should keep the title which was evidenced by the deed from Mikell, it was the equivalent of the delivery of the title deed.

In the case of *Davis* v. *Davis*, 88 *Ga.* 191, it was ruled by this court that where the vendee of land, at the time of taking title thereto, procures a third person to advance a portion of the purchase-money and become his surety on a promissory note to the vendor for the balance, and deposits the deed with such third person as collateral security for the repayment of the purchase-money so advanced, and a few days thereafter executes and delivers to such third person his promissory note, to be due thereafter, for the whole amount of such purchase, no resulting trust is created in behalf of such third person, nor does any equitable lien arise by reason of the deposit of the title deed. It is true that in the case of *English* v. *McElroy*, 62 *Ga.* 413, it was ruled that the deposit of deeds as collateral security for a debt does not create such a lien on the land as can be enforced at law, and that a bill in equity will lie to complete the contract and subject the land; but an examination of the record in that case shows that there was a written contract that the deeds so held were to be held as collateral security for the payment of the note, and it was because such a

contract was reduced to writing that the ruling was made, thus bringing the transaction within the statute of frauds, which declares that to make a contract for the sale of lands or any interest in or concerning them binding, such contract must be in writing. Civil Code, § 2693. Nor was such verbal contract sufficient to create a lien of any character on the land for the purpose of securing the payment for the supplies furnished. Certainly it was not a mortgage, because a mortgage must necessarily be in writing and be duly executed by the party to be bound thereby. A verbal mortgage is not valid. Civil Code, § 2724; *Duke* v. *Culpepper*, 72 *Ga.* 845. So that, as a matter of law, Parrish had neither a right in the land, nor any lien upon it, at the time he made the conveyance to Sharpe & Co.; nor can it be successfully contended that, under his own evidence, he afterwards acquired a title by a surrender of the land to him, because there was no proper conveyance. Of course, if the theory of Pierce be right, and the evidence which he introduced to sustain it be the truth, not only did Parrish not have any title or lien, but he had no equity of any character which could be enforced, and the matter would be reduced to a plain debt due by Pierce to Parrish. If this view of the law be correct, Pierce was entitled to have a conveyance of the land made to him by Parrish as of the date of the payment of the purchase-money, irrespective of the advances; and if the latter refused to make such conveyance, it could be compelled by decree. Under our construction of the rights of the parties as affected by this contract, it was error for the court to charge the jury that if they should find from the evidence that the plaintiff was indebted to the defendant Parrish any amount, and that the plaintiff agreed that Parrish might hold the title to the land until he was paid, their verdict should be for the defendant. We have thus dealt with this single branch of the case, because its proper determination requires that the verdict should be set aside. If there are rights or equities which exist on either side, arising out of the transactions of the parties, other than the agreement which we have been considering, they can be properly adjusted in another trial, and enforced by a proper decree. A new trial should have been granted.

*Judgment reversed. All the Justices concurring.*